Kane County Circuit Court    THOMAS M. HARTWELL    ACCEPTED: 8/31/2018 2:54 PM    By: BG    Env #2054616

# 16th JUDICIAL CIRCUIT
## NEW CASE INFORMATION SHEET 18-L-000468

Case No. _____

| | | |
|---|---|---|
| **Harvest Bible Chapel** | **Evangelical Christian Credit Union** | *Thomas M. Hartwell* <br> Clerk of the Circuit Court <br> Kane County, Illinois <br><br> 8/31/2018 2:11 PM <br><br> FILED/IMAGED |
| Plaintiff/Petitioner | Defendant/Respondent | File Stamp |

**All Parties must be listed on new case filing sheet, or on an attached sheet following the same format as below.**
**(PLEASE TYPE OR PRINT)**

1. Case Type **L**     2. Sub Case Type **0106**     3. Claim Amount **>$50,000** 4. Jury **Yes**
   (See page 2 for codes)         (See page 2 for codes)                                              (yes/no)

5. Return date/time (where return date summons is used): _____

6. Plaintiff Attorney's ARDC number: **6216623**
   Attorney's Name: **Nudo, Christopher S.**
             (Last, First, MI)

7. **First named Plaintiff: Harvest Bible Chapel**
   Address: **1000 N. Randall Rd.**
   City: **Elgin**        State/Zip Code: **IL 60123**        Phone #: **+1 (847) 398-7005**

8. Additional Plaintiff/AKA/DBA/FKA/NKA/Other: _____
   Address: _____
   City: _____ State/Zip Code: _____ Phone #: _____

9. Additional Plaintiff/AKA/DBA/FKA/NKA/Other: _____
   Address: _____
   City: _____ State/Zip Code: _____ Phone #: _____

10. **First named Defendant: Evangelical Christian Credit Union**
   Address: **955 West Imperial Hwy, Ste 100**
   City: **Brea**        State/Zip Code: **CA 92821**        Phone #: **+1 (714) 671-5700**

11. Additional Defendant/AKA/DBA/FKA/NKA/Other: _____
   Address: _____
   City: _____ State/Zip Code: _____ Phone #: _____

12. Additional Defendant/AKA/DBA/FKA/NKA/Other: _____
   Address: _____
   City: _____ State/Zip Code: _____ Phone #: _____

P1-CI-001 (12/14)



EXHIBIT

1

**\* Case Type Codes are: L, AR, LM, SC, TX, ED, MR, CH, AD, F, OP, D, J, JA, MH and MC**
**\* Sub Case Type Codes are listed under each below.**

**Law (L)  ($50,000 & over)**

0101 Tort $ damages-auto-prop
0102 Tort $ damages-auto-prop & pers inj
0103 Tort $ damages-auto-pers inj
0104 Tort $ damages-auto-pers inj & death
0105 Tort $ damages-auto-death
0106 Tort $ damages-other
0107 Contract $ damages
0108 Confession of Judgement
0109 Forcible Entry-Detainer possess & $
0110 Forcible Entry-Detainer possession only
0111 Distress for Rent
0112 Stat Act recover suppt or contrib
0113 Arbitration and Award
0114 Detinue
0115 Ejectment
0116 Replevin
0117 Trover
0118 Malpractice-medical
0119 Malpractice-legal
0120 Malpractice-other
0121 Alienation of Affection
0122 Class Action Suit
0123 Registration of Foreign Judgment
0125 Forcible/Tenant Foreclosure
0130 Other (specify)

**Arbitration (AR)  (10,001 to 50,000)**

\*Adm Arb Jud Review - see MR
1501 Tort $ damages-auto-prop
1502 Tort $ damages-auto-prop & pers inj
1503 Tort $ damages-auto-pers inj
1504 Tort $ damages-auto-pers inj & death
1505 Tort $ damages-auto-death
1506 Tort $ damages-other
1507 Contract $ Damages
1512 Stat Act/recover suppt or contrib
1513 Arbitration and Award
1518 Malpractice-medical
1519 Malpractice-legal
1520 Malpractice-other
1521 Alienation of affection
1522 Class Action Suit
1531 Other (specify)

**Law Medium (LM)  (0 to 50,000)**

0208 Confession of Judgment
0210 Forcible Entry-Detain poss & $
0211 Distress for Rent
0214 Detinue
0215 Ejectment
0216 Replevin
0217 Trover
0223 Registration of Foreign Judgment
0224 Forcible Entry-Detainer poss only
0225 Forcible/Tenant Foreclosure
0230 Other (specify)

**Small Claims (SC)  (up to 10,000)**

0301 Contract-money-damages
0302 Tort-money damages-auto
0303 Tort-money damages-other
0304 Collection of taxes
0305 Registration of Foreign Judgment
0330 Other (specify)

**Tax (TX)**

0401 Recover Delin Pers Prop Tax
0402 Retailers Occupation Tax
0403 Petition for Tax Refund
0404 Tax Foreclosure
0405 Tax Injunction
0406 Annual Tax Sale
0407 Scavenger Tax Sale
0408 Tax Objection
0409 Tax Commission (review of decision)
0410 Drainage Assessmt
0411 Special Assessmt

**Tax (TX) (cont.)**

0412 Foreclosure Lien Spec Assessmt
0413 Suit Restrain Collect Spec Assessmt
0414 Tax Deed
0415 Petition for Recovery
0416 Registration of Foreign Judgment
0417 Sale in Error
0430 Other (specify)

**Eminent Domain (ED)**

0501 Condemnation
0530 Other (specify)

**Miscellaneous Remedies (MR)**

0601 Jud Review of Adm Agcy (includes
     Arbitration but not tax)
0602 Jud Review of Workers Comp
0603 Jud Review of Unemployment
0604 Declaratory Judgment
0605 Corporation Dissolution
0606 Change of Name
0607 Habeas Corpus
0608 Mandamus
0609 Prohibition
0610 Quo Warranto
0611 Attachment/original action for
0612 Ne Exeat/original action for
0613 Escheat
0614 Lost Goods or Money
0615 Burnt Records
0616 Election Contest
0617 Discovery
0618 Search Warrant
0619 Civil Forfeitures
0620 Seizure Warrant
0621 Registration of Fictitious Record
0622 Sex Transmiss Disease Control Act
0623 Contagious/Infectious Disease
0624 Registration of Foreign Judgment
0625 Petn Issue Foreign Subpoena
0626 Eavesdropping/criminal surveillance
0627 Demolition
0628 Extradition
0629 Rendition
0630 Other (specify)
0631 Sexually Violent Person
0632 Building Code Violation
0633 Statewide Grand Jury Act
0634 Fugitive from Justice
0635 Compact Interstate Violation
0636 SAO-Subpoena
0637 Expungement
0638 Juvenile Search Warrant
0639 Pen Register

**Chancery (CH)**

0701 Injunction (except TX or D cases)
0702 Real Estate Mortgage Foreclosure
0703 Mechanic Lien Foreclosure
0704 Foreclose Sec Int Personal Property
0705 Partnership Dissolution
0706 Specific Performance
0707 Partition
0710 Construction of Inter Vivos Trust
0711 Construction of Testy Trust
     (P-disposed)
0712 Trust Administration
0713 Quiet Title
0714 Complaint in Equity
0715 Accounting
0716 Receivership
0717 Rescission of Contract
0718 Creditor's Complaint
0719 Uniform gift to Minor Act
0720 Setting Aside a Deed
0721 Foreclose on Condo Assessment
0722 Interpleader
0723 Registration of Foreign Judgment
0730 Other (specify)

**Adoption (AD)**

0801 Adoption
0817 Adoption-unborn child

**Family (F)**

0802 Putative Father
0803 Paternity
0804 Parent and Child Relationship
0806 Reciprocal Non-Support
0807 Neglect and Refusal to Support
0808 Civil Action to Compel Support
0809 UIFSA-Incoming
0810 UIFSA-Outgoing
0811 Registration of Foreign Judgment
0818 Confidential Intermediary
0823 Non Cust/Admin Support
0824 Grandparent Visitation (non-case)
0825 Paternal Notice Minor Abortion Law
0829 Petition for Medical Insurance Benefits
0830 Other (specify)
0904 Petition for Custody
0905 Petition for Visitation
1005 Emancipation of Minor
1006 Petn for Marriage License

**Order of Protection (OP)**

0805 Domestic Violence Act/Order of Protection
0819 Registration of Foreign Judgment
0822 Civil No Contact Order
0826 Order of Protection Stalking No Contact

**Divorce (D)**

0901 Dissolution
0902 Invalidity
0903 Legal Separation
0906 Simplified Dissolution
0907 Registration of Foreign Judgment
0908 Civil Union Dissolution
0930 Other (specify)

**Juvenile (J)**

1002 Supervision
1003 Dependency
1007 Addicted Minor
1008 Truancy
1009 Minor Require Authority Intervention
1010 Temporary Guardian
1030 Other (specify)

**Juvenile Neglect or Abuse (JA)**

1004 Neglect or Abuse

**Mental Health (MH)**

1101 Petition for Hospitalization
1102 Petition for Discharge
1103 Petition for Restoration
1104 Author Emgcy Med/Dental Treatment
1105 Author Psychotropic Medication
1106 Administrator to Admin Treatment
1130 Other (Specify)

**Municipal Corporation (MC)**

1301 Petn to Organize municipal corp
1302 Petn to Dissolve municipal corp
1303 Petn to Create Drainage Dist
1304 Petn to Change of Government
1305 Petn to Disconnect From Fire District
1330 Other (specify)

**Will (WI)**

1601 Will

Kane County Circuit Court    THOMAS M. HARTWELL    ACCEPTED: 8/31/2018 2:54 PM    By: BG    Env #2094010

*Thomas M. Hartwell*
Clerk of the Circuit Court
Kane County, Illinois

**8/31/2018 2:11 PM**

FILED/IMAGED

| | |
|---|---|
| **STATE OF ILLINOIS** | ) |
| | ) SS |
| **COUNTY OF KANE** | ) |

IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
KANE COUNTY, ILLINOIS

| | |
|---|---|
| **HARVEST BIBLE CHAPEL,** | ) |
| | ) |
| **Plaintiff,** | ) **CASE NO.** 18-L-000468 |
| | ) |
| v. | ) |
| | ) |
| **EVANGELICAL CHRISTIAN CREDIT UNION,** | ) **JURY DEMANDED BY** |
| | ) **PLAINTIFF** |
| **Defendant.** | ) |

## VERIFIED ORIGINAL COMPLAINT AT LAW

**NOW COMES,** the Plaintiff, Harvest Bible Chapel (hereinafter referred to as "HBC" or "Church"), by and through its attorney, CHRISTOPHER S. NUDO, and complains of the Defendant, Evangelical Christian Credit Union ("ECCU"), as follows:

## NATURE OF THE ACTION

1.    HBC borrowed money from ECCU in the form of five (5) loans.

2.    The loans were all made between HBC as borrower and ECCU as lender.

3.    Beginning in 2017 and continuing well into 2018, ECCU and HBC had been discussing either refinancing the current loans to a lower interest rate or modifying the existing loans to lower interest rates.

4.    During the time that HBC was waiting on ECCU, there were other lenders who presented offers to refinance the loans for HBC. Based upon assurances made by ECCU and the long and loyal relationship ECCU and HBC had with one another, HBC did not pursue the other offers.

**NOTICE**
**BY ORDER OF THE COURT THIS CASE IS HEREBY SET FOR**
**CASE MANAGEMENT CONFERENCE ON THE DATE BELOW.**
**FAILURE TO APPEAR MAY RESULT IN THE CASE BEING**
**DISMISSED OR AN ORDER OF DEFAULT BEING ENTERED.**
**Judge: Clancy Boles, Susan**
**11/15/2018 9:00 AM**

5.      In early August 2018, ECCU denied the loan modification and loan refinance.

6.      HBC's senior officers have phoned and emailed ECCU's President and CEO, five times, on August 10, 2018, August 14, 2018, August 21, 2018, August 27, 2018, and August 30, 2018 in an effort to avoid litigation. There has been no response.

## VENUE AND JURISDICTION

7.      This Court has venue and jurisdiction over the above-listed causes of action, wherein a substantial part of the events or omissions giving rise to these claims occurred at Harvest Bible Chapel principal place of business in Elgin, Kane County, Illinois 60123.

8.      ECCU is subject to service of process through its registered agent, Abel Pomar, at 955 West Imperial Hwy, Ste 100, Brea, CA 92821.

9.      The Church that is the primary focus of the litigation has a principal place of business at 1000 N. Randall Rd, in Elgin, Illinois.

## THE PARTIES

10.     Harvest Bible Chapel, a not-for-profit Illinois corporation that is a nondenominational bible believing church that began in 1988 and maintains seven locations throughout the Chicago metro area. Harvest Bible Chapel's main source of revenue is from charitable contributions made by its members. As an Illinois not-for-profit, which holds a letter of determination as qualified under IRC 501(c)3, Harvest Bible Chapel is organized to serve the public and its members and to wisely steward the resources it is entrusted.

11.     Evangelical Christian Credit Union is organized as a domestic not-for-profit corporation in the State of California to operate as a Credit Union. It operates as a depository institution and it facilitates loans for churches throughout the country, including Illinois.

2

## FACTS COMMON TO ALL ALLEGATIONS

12.     HBC borrowed money from ECCU in the form of five (5) loans.

13.     The loans were all made between HBC as borrower and ECCU as lender.

14.     Beginning in 2017 and continuing well into 2018, ECCU and HBC had been discussing either refinancing the current loans to a lower interest rate or modifying the existing loans to lower interest rates.

15.     Between March 2018 and the end of July 2018, there were extensive discussions and the exchange of documents between ECCU and HBC in order to accomplish the refinance or loan modification.

16.     During the time that HBC was waiting on ECCU, there were other lenders who presented offers to refinance the loans for HBC.  Based upon assurances made by ECCU and the long and loyal relationship ECCU and HBC had with one another, HBC did not pursue the other offers.

17.     ECCU lacked sufficient lending capability in order to fund the entire loan, so ECCU assembled other investors who had inner creditor agreements with ECCU, in order to fund the full amount of the loans.

18.     Each loan has defined dates in which the interest rate adjusts based upon a predefined formula found in the loan documents.

19.     Between March 2018 and the end of July 2018, there were extensive discussions and the exchange of documents between ECCU and HBC in order to accomplish the refinance or loan modification.  On many occasions beginning in May 2017 and continuing frequently, ECCU would represent to HBC that the plan to modify some loans

3

and refinance the others was approved and only waiting on full participation from the investors that were supplementing the full funding for ECCU.

20.     These communications included phone calls, emails, text messages and then ultimately a written conditional loan commitment.

21.     During the time that HBC was waiting on ECCU, there were other lenders who presented offers to refinance the loans for HBC.

22.     In May 2018, during a phone call between Jeff Sharda, CFO of HBC and Michael Boblit, officer at ECCU, asserted that HBC should not pursue any other lender relationships because ECCU wanted to retain the loans, and that ECCU would close the loans on or before July 31, 2018.  HBC relied to its detriment on the assertions and promises of ECCU's employee Michael Boblit.

23.     During the month of July 2018, Michael Boblit who was the designated corporate officer overseeing the HBC loans was dismissed by ECCU.

24.     On or about Monday, August 6, 2018, seven (7) corporate officers, board members, and staff from ECCU called HBC to inform HBC that they were unwilling to proceed with the loan modification and loan refinance as ECCU had previously promised. This was in direct conflict with the assurances HBC was given by ECCU on July 20, 2018, that the largest of the loans had full investor participation and was on schedule to close by July 31, 2018.

25.     On or about July 20, 2018 at on or about 6:20 pm CST, Jason Lietzau an employee of ECCU in a text message to Jeff Sharda of HBC stated, *"Hi Jeff. This is Jason at ECCU. I just got out of a meeting with the team. We r moving to close The Elgin (Big Loan) by 7/31 and possibly Crystal Lake. Niles is close but will probably be next month."*  This was one

4

of many assurances that HBC relied upon that a loan modification and refinance was going to be completed in the second quarter of 2018, but no later than the end of July 2018.

26.     HBC relied upon the verbal and written statements from ECCU, and did not pursue alternative financing opportunities from other institutions that offered to refinance the loans.

27.     Michael Boblit, a senior officer at ECCU, was constantly in communication with HBC, either by face-to-face meetings, phone, text message and email, and always communicated that the closing of the loan modifications and refinances was on track.

28.     On August 1, 2018, the interest rate on the largest loan reset and HBC is scheduled to make a loan payment that is nineteen percent (19%) greater than its current loan payment.

29.     With each delay caused by ECCU, interest rates in the market continued to increase, making it more and more difficult for HBC to refinance the loans with another lender at an interest rate that was competitive with the rates HBC is currently paying.

## COUNT I
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

30.     Plaintiff realleges and incorporates herein by reference the allegations made in Paragraphs 1 – 29.

31.     The State of Illinois recognizes the tort of intentional interference with prospective economic advantage.

32.     To state this cause of action, the following must be alleged:

     (a) a reasonable expectancy of entering into a valid business relationship;

     (b) the defendant's knowledge of the expectancy;

    (c) an intentional and unjustified interference by the defendant that induced or

        caused a breach or termination of the expectancy; and

    (d) damage to the plaintiff resulting from the defendant's interference.

*Anderson v. Vanden_Dorpel*, 172 Ill. 2d 399, 406-07, 217 Ill. Dec. 720, 667 N.E.2d 1296 (1996).
*Id.*

33.     There is sufficient expectancy that HBC and ECCU would continue with their business relationship, since they have been working together since 2006.

34.     Over the course of more than a year ECCU persuaded HBC to continue relying upon ECCU for its depository and loan relationship, despite other options offered to HBC by other lending institutions.

35.     Based upon the emails, text messages, phone calls and written commitments presented by ECCU to HBC, HBC lost the opportunity to accept the other borrowing options to refinance the loans with ECCU.

36.     ECCU was aware that they were not going to conclude the loan modifications and refinance but consistently mislead to HBC in order to sufficiently delay HBC. As a result, the August 1, 2018 deadline arrived and HBC is now being forced to pay a significantly higher interest rate.

37.     As a result of ECCU's direct interference with these other lending relationships, HBC is now not able to refinance the loans before August 1, 2018.

38.     As a result of ECCU's direct interference with these other lending relationships, HBC is now not able to refinance the loans at a competitive rate due to the increasing interest rate market.

39.     Wherefore the Church is entitled to damages as set forth in the Prayer for Relief.

## COUNT II
## PROMISSORY ESTOPPEL

40.    Plaintiff realleges and incorporates herein by reference the allegations made in

Paragraphs 1 – 29.

41.    The State of Illinois recognizes the doctrine of promissory estoppel as an affirmative

cause of action. This doctrine can be found in Restatement (Second) of Contracts as Section

90.

42.    " § 90.    Promise Reasonably Inducing Action or Forbearance

(1) A promise which the promisor should reasonably expect to induce action or
forbearance on the part of the promisee or a third person and which does induce such
action or forbearance is binding if injustice can be avoided only by enforcement of the
promise.    The remedy granted for breach may be limited as justice requires."
Restatement (Second) of Contracts § 90(1), at 242 (1981).

*Quake Construction, Inc. v. American Airlines, Inc.,* 141 Ill.2d 281, 152 Ill.Dec. 308, 565
N.E.2d 990 (1990).

*Id.*

43.    Over the course of more than a year ECCU promised HBC that ECCU would modify

and refinance the loans to the point where such promise created the sufficient inducement

by ECCU to HBC where a forbearance by HBC to accept other options offered to HBC by

other lending institutions created a promise by ECCU that needs to be upheld.

44.    This promise is clearly proven by the many emails, phone calls, text messages and

written commitments presented by ECCU to HBC, in which HBC lost the opportunity to

accept the other borrowing options to refinance the loans with ECCU.

45.    ECCU was aware that they were not going to conclude the loan modifications and

refinance but consistently mislead HBC in order to sufficiently delay HBC so that the

August 1, 2018 deadline would arrive and HBC would be forced to pay a significantly

higher interest rate.

7

46.     As a result promisor, ECCU, should reasonably expect that it has induced with emails, phone calls, text messages and written commitments that action or forbearance on the part of HBC not to take the other borrowing opportunities.

47.     Wherefore the Church is entitled to damages as set forth in the Prayer for Relief.

## COUNT III
## NEGLIGENT SUPERVISION

48.     Plaintiff realleges and incorporates herein by reference the allegations made in Paragraphs 1 − 29.

49.     The State of Illinois recognizes negligent supervision as a cause of action if the following are established:

(1)     the employer had a duty to supervise its employee;

(2)     the employer negligently supervised its employee; and

(3)     such negligence proximately caused the plaintiff's injuries.

*Lansing v. Southwest Airlines Co., 2012 IL App (1st) 101164*

*Id.*

50.     That since 2014, Michael Boblit and other staff members have been the corporate officers and staff at ECCU responsible for the loans with HBC.

51.     That ECCU had a duty to supervise Michael Boblit as an officer of ECCU and the other staff at ECCU.

52.     That ECCU negligently supervised Michael Boblit in his actions, communications, promises and assertions he made to HBC where he always assured HBC that the refinance and loan modifications were going to close prior to detrimental interest rate adjustments for HBC.

8

53.     That ECCU negligently supervised its employees actions, communications, promises and assertions made to HBC, related to the assurances and promises made to HBC regarding the fact that the refinance and loan modifications were going to close prior to detrimental interest rate adjustments for HBC.

54.     That as a result of ECCU's negligent supervision of Michael Boblit, and other employees HBC has been significantly financially harmed and set back in its opportunities to refinance its loans with other lenders.

55.     That as a result of ECCU's negligent supervision of Michael Boblit, and its employees, HBC has been significantly harmed financially and set back in its opportunity to refinance the loans at lower interest rates due to the increasing interest rate market.

56.     That ECCU's negligent supervision of Michael Boblit and other employees have created significant harm and injury to HBC.

57.     Wherefore the Church is entitled to damages as set forth in the Prayer for Relief.

## COUNT IV
## DECEPTIVE TRADE PRACTICES

58.     Plaintiff, realleges and incorporates herein by reference the allegations made in Paragraphs 1 – 29.

59.     The Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 provides as follows, in relevant part:

(a)     A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:

        (i) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

9

(ii) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

(b) disparages the goods, services, or business of another by false or misleading representation of fact;

(c) advertises goods or services with intent not to sell them as advertised;

(d) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

(e) In order to prevail in an action under this Act, a plaintiff need not prove competition between parties or actual confusion or misunderstanding.

60.     ECCU is a "person" for purposes of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2.

61.     ECCU issued many written statements by email and otherwise in which such conduct was directed to mislead and cause HBC to not take advantage of other borrowing opportunities from other lenders.

62.     ECCU intentionally mislead and deceived HBC in to believing that it was going to modify and refinance the loans before the August 1, 2018 interest rate adjustment.

63.     It now appears that ECCU was acting in a false and deceptive way in all the communications to create delay in order for the August 1, 2018 deadline to arrive and HBC is forced to absorb a significantly higher interest rate and loan payment.

64.     Wherefore the Church is entitled to damages as set forth in the Prayer for Relief.

### COUNT V
### COMMON LAW FRAUD

65.     Plaintiff realleges and incorporates herein by reference the allegations made in Paragraphs 1 – 29.

66.     The State of Illinois recognizes the tort of common law fraud when the following elements are established:

(1)      The defendant must make a false statement of material fact to the plaintiff;

(2)      the defendant must have made such statement knowing that it was false;

(3)      the defendant must have made the statement with the intent that the plaintiff rely on it;

(4)      the plaintiff must have acted in reliance on the statement; and

(5)      the plaintiff must have been damaged by his reliance on the statement.

*Maturo v. Gerard,* 494 A.2d 1199, 196 Conn. 584, 1985 Conn.

67.     ECCU allowed its employees to issue a written loan commitment, emails, written documents and phone calls that clearly indicated that the loan modifications and refinance was going to occur.  ECCU never intended to honor these commitments of its agents. HBC relied on these fraudulent statements to its detriment.

68.     During a phone call on August 6, 2018, ECCU communicated that it was no longer going to modify and refinance the loans.  It stated the reason for that change was due to a change in HBC's financial condition.  These statements by ECCU were false since the financial statements provided by HBC to ECCU demonstrated no material adverse change in the financial condition of HBC.

69.     Wherefore the Church is entitled to damages as set forth in the Prayer for Relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, HARVEST BIBLE CHAPEL, respectfully demands the following relief from the Defendant, EVANGELICAL CHRISTIAN CREDIT UNION.:

11

A. With respect to **COUNT I, INTENTIONAL INTERFERENCE WITH**

   **PROSPECTIVE ECONOMIC ADVANTAGE:**

1) A permanent injunction against ECCU from enforcing its August 1, 2018 interest rate increase.
2) Specific performance requiring ECCU to finalize the loan modifications and refinances as it promised.
3) ECCU to release the encumbered collateral on loans which are paid off by HBC.
4) Special damages
5) Punitive damages
6) Compensatory damages for the harm and costs HBC has lost as a result of not refinancing the loans with another lender.
7) Compensatory damages for all harm, costs and fees HBC has paid as a result of the interference.


B) With respect to **COUNT II, PROMISSORY ESTOPPEL:**

1) A permanent injunction against ECCU from enforcing its August 1, 2018 interest rate increase.
2) Specific performance requiring ECCU to finalize the loan modifications and refinances as it promised.
3) ECCU to release the encumbered collateral on loans which are paid off by HBC.
4) Special damages
5) Punitive damages
6) Compensatory damages for the harm and costs HBC has lost as a result of not refinancing the loans with another lender.
7) Compensatory damages for all harm, costs and fees HBC has paid as a result of the promises made by ECCU.


C) With respect to **COUNT III, NEGLIGENT SUPERVISION:**

1) A permanent injunction against ECCU from enforcing its August 1, 2018 interest rate increase.
2) Specific performance requiring ECCU to finalize the loan modifications and refinances as it promised.
3) ECCU to release the encumbered collateral on loans which are paid off by HBC.
4) Special damages
5) Punitive damages
6) Compensatory damages for the harm and costs HBC has lost as a result of not refinancing the loans with another lender.
7) Compensatory damages for all harm, costs and fees HBC has paid as a result of the ECCU's negligent supervision.

12

D) With respect to **COUNT IV, DECEPTIVE TRADE PRACTICES:**

1) A permanent injunction against ECCU from its August 1, 2018 interest rate increase.
2) Specific performance requiring ECCU to finalize the loan modifications and refinances as it promised.
3) ECCU to release the encumbered collateral on loans which are paid off by HBC.
4) Special damages
5) Punitive damages
6) Compensatory damages for the harm and costs HBC has lost as a result of not refinancing the loans with another lender.
7) Compensatory damages for all harm, costs and fees HBC has paid as a result of the deceptive trade practices.

E) With respect to **COUNT V, COMMON LAW FRAUD:**

1) A permanent injunction against ECCU from enforcing its August 1, 2018 interest rate increase.
2) Specific performance requiring ECCU to finalize the loan modifications and refinances as it promised.
3) ECCU to release the encumbered collateral on loans which are paid off by HBC.
4) Special damages
5) Punitive damages
6) Compensatory damages for the harm and costs HBC has lost as a result of not refinancing the loans with another lender.
7) Compensatory damages for all harm, costs and fees HBC has paid as a result of the fraud.

Respectfully submitted,

Christopher S. Nudo
General Counsel Harvest Bible Chapel

Attorney for Plaintiff: Christopher Nudo
Atty. Registration No.: 6216623
Address: 1000 N. Randall Rd.
City, State, Zip: Elgin, IL 60123
Telephone: 847-398-7005 x3207
Attorney Email: cnudo@harvestbiblechapel.org

13

## **VERIFICATION**

James Scott Milholland, being duly sworn, deposedes and says:

I am the Chief Operating Officer of Harvest Bible Chapel, the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief as to those matter, I believe them to be true.

To the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of these papers or the contentions therein are not frivilous.

James Scott Milholland, COO
Harvest Bible Chapel

Sworn to before me this 31st day
of August, 2018.

Notary Public

OFFICIAL SEAL
MARTEL D SARDINA
NOTARY PUBLIC - STATE OF ILLINOIS
My Commission Expires Dec. 01, 2019

14